**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

VINCENT DEPASQUALE,           )       3:11-cv-00191-LRH (WGC)
                              )
       Plaintiff,            )       **REPORT AND RECOMMENDATION**
                              )       **OF U.S. MAGISTRATE JUDGE**
vs.                           )
                              )
STATE OF NEVADA, et. al.      )
                              )
                              )
       Defendants.           )
_____ )

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion to Dismiss. (Doc. #18.)[1] Plaintiff has opposed (Doc. #23), and Defendants have replied (Doc. # 29). After a thorough review, the court recommends that Defendants' motion be granted in part and denied in part.

### I. BACKGROUND

Plaintiff Vincent Depasquale (Plaintiff), a *pro se* litigant in custody of the Nevada Department of Corrections (NDOC), brings this action pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 (ADA), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (RA). (Pl.'s Am. Compl. (Doc. #13 ) at , 5.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP), Northern Nevada Correctional Center (NNCC), and Lovelock Correctional Center (LCC). (*Id*.) Defendants are the State of Nevada *ex rel*. NDOC, Greg Cox, E.K. McDaniel, Robert LeGrand,

---

[1] Refers to court's docket number. Defendants also filed an errata to their motion. (Doc. # 38.)

1  Adam Endel, Debra Brooks, Dr. Robertson, Dr. Martin, Don Poag, and Dr. Scott. (Doc. # 13
2  at 2-4.)
3      In Count 1, Plaintiff alleges that while he was incarcerated at ESP, defendant Dr.
4  Robertson, an optometrist at the prison, ignored Plaintiff's requests for medical attention, and
5  as a result, he went blind. (Doc. # 13 at 6.) Plaintiff further alleges that Dr. Martin failed to
6  follow the recommendations of another doctor to get Plaintiff a glass eye to reduce the risk of
7  further infection, and did not give Plaintiff prescribed medications to prevent infections. (*Id*.)
8  On screening, the court determined that Plaintiff states a colorable claim for deliberate
9  indifference to a serious medical need under the Eighth Amendment as to these defendants.
10 (Screening Orders Doc. # 7 at 2, Doc. # 14.)
11     In Count 2, Plaintiff alleges that he was denied medical services, including braille, a
12 cane, and therapeutic housing assistance and other programs for the blind. (Doc. # 13 at 7.)
13 On screening, the court determined that Plaintiff states colorable claims under the ADA and
14 RA as to defendants McDaniel, LeGrand, Brooks, Endel, Scott, and Poag. (Doc. # 7, Doc. # 14.)
15     In Count 3, Plaintiff claims he was denied his right of access to the courts. (Doc. # 13
16 at 10.) He alleges that it took eight (8) months for special arrangements to be made for him to
17 meet with prison law library workers who could assist him in pursuing his claims. (*Id*.) He
18 claims that this resulted in his being unable to timely file grievances, and therefore defenses,
19 including exhaustion and statute of limitations should not apply to his action. (*Id*.) On
20 screening, the court determined that Plaintiff states a colorable claim of denial of access to the
21 courts. (Doc. # 7 at 3, Doc. # 14.)
22     Defendants move to dismiss this action on the ground that Plaintiff failed to exhaust
23 available administrative remedies. (Doc. # 18.)
24                          **II. LEGAL STANDARD**
25     The PLRA provides that "[n]o action shall be brought with respect to prison conditions
26 under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
27 prison, or other correctional facility until such administrative remedies as are available are
28

2

exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

For prisoners within the NDOC system, exhaustion of administrative remedies requires

complying with the inmate grievance procedure set forth in NDOC Administrative Regulation (AR) 740. (Doc. # 18-1 Ex. A.) Under the version of AR 740 effective during the time period in question, the procedure consisted of: (1) an informal level grievance; (2) a first level grievance; and (3) a second level grievance. (Doc. # 18-1 Ex. A at 11.)

### III. DISCUSSION

**A. Count 1**

In connection with Count 1, Plaintiff alleges that defendant Martin did not facilitate proper treatment or diagnosis, in the form of providing him with a glass eye, and refused to give Plaintiff prescriptions to prevent an infection. (Doc. # 18 at 4.) Defendants argue that Plaintiff's grievance related to his eyesight, grievance number 20062902339, does not provide notice of the claims against defendant Martin so that prison officials could have concluded that the matter could have been resolved by providing Plaintiff with a glass eye and medications to prevent infection. (*Id.*)

Plaintiff admits that this grievance does not relate to Dr. Martin's conduct. (Doc. # 23 at 2:23-24.) He does not dispute that he failed to exhaust his administrative remedies with respect to this claim against Dr. Martin, but argues instead this was due to circumstances beyond his control. (Doc. # 23 at 3.)

The PLRA requires "proper" exhaustion. *Woodford*, 548 U.S. at 83-84. Prisoners cannot exhaust their administrative remedies by filing late or otherwise defective grievances. *Id*. While the Ninth Circuit has discussed possible exceptions to the PLRA's exhaustion requirement, they do not include an inmate being unable to file a grievance due to circumstances beyond his control, as Plaintiff suggests. *See Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010). Plaintiff failed to grieve his claim with respect to defendant Martin's conduct; therefore, that claim should be dismissed without prejudice.

Defendants' motion does not address Count 1 insofar as it is asserted against defendant Robertson. Therefore, Count I will proceed against defendant Robertson.

///

4

**B. Count 2**

    **1. Defendants McDaniel, Brooks, and Endel**

These defendants argue that the relevant grievance, number 20062902339, does not provide notice of the claims asserted against defendants McDaniel, Brooks, and Endel. (Doc. # 18 at 5.) In addition, Defendants argue that the grievance is not timely because Plaintiff alleges that the violations began in October 2009, and under AR 740, they grievance would have had to have been filed sometime in April 2009, and it was not filed until July 27, 2010. (*Id.*)

Plaintiff argues that Count 2 should be allowed to proceed as to these defendants because of circumstances beyond Plaintiff's control, including trips to the hospital, being moved to different facilities and lack of assistance. (Doc. # 23 at 1, 3.)

While inmates are not required to allege the precise legal theory to be advanced, to properly exhaust their administrative remedies, inmates must provide sufficient information in the grievance so that prison staff can address and respond to the situation. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).While a grievance is not *per se* inadequate simply because it fails to name every party who is later sued, *Jones v. Bock*, 549 U.S. 199, 219 (2007), the main purpose of an inmate grievance "is to alert the prison to a problem and facilitate its resolution, not to lay the groundwork for litigation." *Griffin*, 557 F.3d at 1120.

Grievance 20062902339 was initiated at LCC, and makes no mention of ESP or these defendants. While Plaintiff did not necessarily have to name every defendant that he would eventually name in a lawsuit, he was required to include enough detail in the grievance to allow prison officials to address the problem. There is nothing in this grievance that would alert prison officials to any problem related to the health care issues alleged in Count 2 occurring at ESP, and the court finds it cannot be interpreted to grieve issues occurring at ESP. Plaintiff failed to follow AR 740's grievance procedure with respect to his claims against defendants McDaniel, Brooks, and Endel in Count 2, and therefore, this claim should be dismissed without prejudice as to those defendants.

**2. Defendants LeGrand, Scott, and Poag**

As with the ESP defendants, defendants LeGrand, Scott, and Poag argue that Plaintiff's grievance, number 20062902339, was untimely, and did not put the prison on notice of any claims against them. (Doc. # 18 at 6.)

Plaintiff argues that he has complied with the exhaustion requirements with respect to these defendants. (Doc. # 23 at 1.) He asserts that he arrived at LCC in April 2010, and grievance number 20062902339 was timely filed in July of 2010. (Doc. # 23 at 4.) He further contends that grievance 20062906531 sufficiently addresses his claims against these defendants. (*Id.*)

First, these defendants argue that grievance number 20062902339 is untimely. Defendants evidently rely on the statement on the first page of Plaintiff's Amended Complaint indicating that the alleged violations took place from October 2009 through the present. (*See* Doc. # 18 at 6, Doc. # 13.) While not entirely clear, they appear to argue that pursuant to AR 740, Plaintiff was required to grieve this issue within sixth months, and six months from October 2009 is approximately April 2010. Because this grievance was filed in July of 2010, defendants assert that it was untimely. (Doc. # 18-3 at 2.)

While Plaintiff may assert that the constitutional violations that are the subjection of his action began in October 2009, there is no specific allegation that the denial of accommodations at LCC related to his blindness began in October 2009. Plaintiff is correct that he did not arrive at LCC until 2010, so he would not have had occasion for any issues to arise at LCC until that point. (*See* Doc. # 18-4 (Ex. D) at 2, entry dated April 6, 2010.) If Plaintiff arrived at LCC on April 6, 2010, assuming these issues immediately arose upon his arrival, his grievance filed in July 2010 would be timely under AR 740.

Second, these defendants argue that Plaintiff's grievance does not put the prison on notice as to the claims against them.

Plaintiff generally alleges that Defendants have denied him services including braille and a cane, and other programs to assist him in living within NDOC as a blind person. (Doc. # 13

6

at 7.) Plaintiff alleges that defendant LeGrand, Warden of LCC, denied Plaintiff the use of a cane and refused to give Plaintiff time on the exercise yard. (Doc. # 13 at 8.) Plaintiff claims that defendant Scott has refused to give Plaintiff tools to adapt to life as a blind person by refusing to allow Plaintiff to use a cane, braille and other services useful to a blind person. (Doc. # 13 at 9.) He further alleges that defendant Scott refused to assist Plaintiff in obtaining a transfer to a medical facility that would be better equipped for Plaintiff. (*Id.*) Finally, Plaintiff alleges that defendant Poag denied Plaintiff the use of a cane and has not assisted Plaintiff in adjusting to living as a blind person. (*Id.*)

As indicated above, inmates are not required to allege the precise legal theory to be advanced, to properly exhaust their administrative remedies, but must provide sufficient information in the grievance so that prison staff can address and respond to the situation. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). A grievance is not *per se* inadequate simply because it fails to name every party who is later sued. *Jones v. Bock*, 549 U.S. 199, 219 (2007).

*Jones v. Bock* states that a prison's grievance process governs the detail required to satisfy exhaustion requirements. *See Jones*, 549 U.S. at 218. While AR 740 provides that "[a]ll documentation and factual allegations available to the inmate must be submitted", it does not contain a provision that the inmate must specify each and every defendant involved. As a result, Plaintiff was only required to include enough information in his grievance to put the prison on notice of the problem. *Griffin*, 557 F.3d at 1120.

In his informal level grievance, Plaintiff states that he needs some type of blind therapy, that he needs to learn how to walk with a cane, use a phone, etc. (Doc. # 18-3 at 2.) The prison's response to Plaintiff's informal level grievance states that the requested blind therapy services are not available. (Doc. # 18-3 at 4.) In his first level grievance Plaintiff states that the ADA requires that he be given some type of blind therapy. (*Id.* at 5.) The prison's response to the first level grievance states that the ADA deals with access issues and services provided to people with disabilities, not "therapy." (Doc. # 18-3 at 6.) In his second level grievance, Plaintiff

7

1 states that he needs training programs to assist him, including access to a cane, braille, voice
2 mail and books. (*Id.* at 7.) The second level response merely states the initial response would
3 be upheld. (*Id.* at 8.)

4     The court finds that Plaintiff's grievance contained sufficient detail to put these
5 defendants on notice of the problems he was experiencing. Accordingly, the motion to dismiss
6 Count 2 as to defendants LeGrand, Scott, and Poag should be denied.

7 **C. Count 3**

8     Defendants argue that Plaintiff's claim that he was prevented from filing grievances is
9 belied by the record, and a review of his grievance history indicates that he did not file any
10 grievance that could be construed as addressing the denial of access to the courts claim. (Doc.
11 # 18 at 6-7.)

12     Plaintiff does not dispute that he was able to file six separate grievances between
13 January 2010 and August 2010. (Doc. # 23 at 6.) He asserts that his access to courts has been
14 restricted and he has had to rely on other inmates and staff to file grievances and court
15 documents. (*Id.*)

16     Upon further review of the allegations in Count 3, the court finds has determined that
17 it should be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915A(b). While prisoners
18 have a constitutional right of access to the courts, they must allege actual injury. *Lewis v.*
19 *Casey*, 518 U.S. 343, 346, 349 (1996). "Actual injury" is "actual prejudice with respect to
20 contemplated or existing litigation, such as the inability to meet a filing deadline or to present
21 a claim." *Id.* at 348 (internal quotation marks and citation omitted). Plaintiff does not allege
22 that he was unable to bring his lawsuit, but that he was precluded from filing grievances, and
23 that the assertion of an exhaustion defense by defendants would be inequitable. (Doc. # 13 at
24 10.) It does not appear that Plaintiff satisfies the "actual injury" requirement for an access to
25 courts claim which typically requires a showing that a plaintiff could not file an action or
26 missed a filing deadline. Plaintiff admittedly was able to file his lawsuit. More importantly,
27 Plaintiff's allegation that he was unable to file grievances is belied by Plaintiff's Amended
28

8

Complaint itself which evidences that Plaintiff was indeed able to file grievances during the period in question. (*See* Attachment 2 to Pl.'s Am. Compl. (Doc. # 13 at 22-27).)

Accordingly, the court recommends dismissal of this claim with prejudice.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order that Defendants' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Count 1 should be **DISMISSED WITHOUT PREJUDICE** as to defendant **Martin**, but should be allowed to **PROCEED** as to defendant **Robertson**.

(2) Count 2 should be **DISMISSED WITHOUT PREJUDICE** as to defendants **McDaniel, Brooks, and Endel**, but should be allowed to **PROCEED** as to defendants **LeGrand, Scott, and Poag**.

(3) Count 3 should be **DISMISSED WITH PREJUDICE**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: April 27, 2012.

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE