UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| VINCENT DEPASQUALE, | 3:11-cv-00191-LRH-WGC |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| STATE OF NEVADA, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. # 67.)[1] Plaintiff did not file an opposition despite being given an extension of time. (*See* Doc. # 71.) After a thorough review, the court recommends that Defendants' motion be granted.

### I. BACKGROUND

At all relevant times, Plaintiff Vincent Depasquale was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl., Doc. # 13.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC) and Ely State Prison (ESP). (*Id.*) Plaintiff, a pro se litigant, brings the remaining claims in this action pursuant to Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et*.

---

[1] Refers to court's docket number. Unless otherwise noted, all page number references are to the page numbers from the docketed version and not the parties' original page numbers.

*seq.*, and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794.[2] (*Id.*) The remaining defendants are Robert LeGrand, Donald Poag, and Dr. John Scott, whom Plaintiff sues in both their individual and official capacities. (*Id.*) Plaintiff alleges that he was denied services, including braille training, the use of a cane, therapeutic housing assistance and other programs for the blind. (Doc. # 13 at 7.) Plaintiff seeks monetary damages as well as injunctive relief. (Doc. # 13 at 13.)

Defendants have moved for summary judgment, arguing: (1) Plaintiff's ADA claim is barred by the Eleventh Amendment; and (2) Plaintiff's claims fail because Plaintiff cannot establish deliberate indifference. (Doc. # 67.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

---

[2] Plaintiff's other claims brought pursuant to 42 U.S.C. § 1983, as well as all other defendants, have been dismissed. (*See* Docs. # 34, # 49, # 63, # 66.)

2

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

3

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

Finally, the court notes that while Plaintiff failed to oppose the motion, the Ninth Circuit has instructed that "a verified complaint may serve as an affidavit for purposes of summary judgment if it is based on personal knowledge and if it sets forth the requisite facts with specificity." *Moran v. Selig*, 447 F.3d 748, 760 n. 16 (9th Cir. 2006) (citing *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc) ("A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment it if is based on personal knowledge and sets forth specific facts admissible in evidence.")).

### III. DISCUSSION

**A. The ADA and RA in general**

**1. The ADA and RA apply in the prison context to prohibit discrimination on the basis of disability**

Both the ADA and RA apply in the prison context. *See United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted) (affirming that state prisons qualify as a "public entity" under Title II of the ADA); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010) (citations omitted) (noting decisions affirming that these acts apply to state prisoners); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (applying ADA and RA to prisoner's claims and holding that such claims require exhaustion of administrative remedies

1 before suit can be filed). Title II of the ADA and § 504 of the RA, "both prohibit discrimination
2 on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). The ADA
3 applies only to public entities. *Id*. The RA, in contrast, applies to all federally funded programs.
4 *Id*. Defendants do not dispute the general applicability of the ADA and RA in this action. The
5 two acts are nearly identical and case law construing Title II of the ADA generally applies
6 equally to claims raised under the RA. *See, e.g., Duvall v. County of Kitsap*, 260 F.3d 1124,
7 1135-36 (9th Cir. 2001).

**2. The ADA**

Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a). Congress authorized the Attorney General to promulgate regulations under the ADA, which are given legislative weight unless they are found to be "arbitrary, capricious, or plainly contrary to the statute." *Pierce v. County of Orange*, 526 F.3d 1190, 1214 n. 25 (9th Cir. 2007).

Disability means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1); *see also Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir. 2001). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); 28C.F.R. § 35.104.

A physical or mental impairment under the ADA includes visual impairment. *See* 28C.F.R. § 35.104(defining physical or mental impairments under the ADA). In addition, "major life activities" include the ability to see. *Id*.

5

Discrimination under Title II of the ADA includes a public entity's failure to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

In addition, the implementing regulations provide:

> A public entity shall furnish appropriate auxiliary aids and services *where necessary* to afford individuals with disabilities, including applicants, participants, companions, and members of the public, *an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.*

28 C.F.R. § 35.160(b)(1) (emphasis added). Auxiliary aids include "Brailled materials and displays" as well as other "effective methods of making visually delivered materials available to individuals who are blind or have low vision[.]" 28 C.F.R. § 35.104 (defining auxiliary aids and services); *see also* 42 U.S.C. § 12103(1)(B).

Thus, a claim under Title II of the ADA thus requires that a plaintiff establish:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*O'Guinn*, 502 F.3d at 1060 (internal quotation marks and citation omitted, alterations original).

"While the regulations promulgated under Title II provide a framework for analyzing ADA claims generally…inmates' rights must be analyzed 'in light of effective prison administration.'" *Pierce*, 526 F.3d at 1216 (quoting *Gates v. Rowland*, 39 F.3d 1439, 1446 (9th Cir. 1994)). Therefore, claims brought by inmates under the ADA and RA are subject to the "reasonable relation" standard set forth in *Turner v. Safley, 428 U.S. 78 (1987). See id*. Thus, "a regulation that would impinge on inmates' constitutional rights is nevertheless valid if it is reasonably related to the prison's legitimate interests" and to prevail on an ADA/RA claim, the inmate must demonstrate the "challenged prison policy or regulation is unreasonable." *Id*. at

1216-17 (citing *Turner*, 482 U.S. at 89; *Gates*, 39 F.3d at 1447).

The plaintiff bears the burden of demonstrating the elements of his or her prima facie case under the ADA. *Pierce*, 526 F.3d at 1217 (citing *Zukle v. Regents of University of California*, 166 F.3d 1041, 1046 (9th Cir. 1999)). This includes, if necessary, "'the existence of a reasonable accommodation' that would enable him to participate in the program, service or activity at issue." *Id*. In a "reasonable accommodation" case, once the plaintiff has met his burden, the defendant may rebut the plaintiff's showing, by establishing the accommodation would result in a fundamental alteration or undue burden. *Id*. (citing 28 C.F.R. § 35.150(a)(3)). In conducting its "fact-specific, context-specific inquiry" in this context, the court is permitted to take into account, "with deference to the expert views of facility administrators, a detention or correctional facility's legitimate interests (namely, in 'maintaining security and order and 'operating [an] institution in a manageable fashion[.])'" *Id*. (citations omitted).

**3. The RA**

The RA provides in relevant part: "No otherwise qualified individual with a disability… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a)

Therefore, a claim under the RA requires that a Plaintiff establish: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefits; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *O'Guinn*, 502 F.3d at 1060 (internal quotation marks and citation omitted).

Again, claims under the RA are also analyzed "in light of effective prison administration," giving deference to the prison's legitimate interests in maintaining safety, security and order. *See Pierce*, 526 F.3d at 1216 (citing *Gates*, 39 F.3d at 1446).

///

///

7

### B. Plaintiff cannot maintain claims under the ADA or RA against Defendants in their individual capacities

Plaintiff cannot maintain a claim under the ADA or RA against Defendants in their individual capacities. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

### C. Plaintiff cannot maintain his official capacity damages claims against Defendants

Defendants argue that Plaintiff cannot maintain his ADA claim against them in their official capacities because they have immunity from suit under the Eleventh Amendment.

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity to the extent the conduct complained of actually violates a provision of the Constitution incorporated by Section 1 of the Fourteenth Amendment. *Id*. at 157-59 (finding that Title II of the ADA validly abrogated sovereign immunity to the extent the conduct complained of actually violated the Eighth Amendment right against cruel and unusual punishment). However, in remanding the case, it left for the district court, in the first instance, to determine whether with respect to conduct that violates Title II, but not a provision of the Constitution incorporated by the Fourteenth Amendment, abrogation of sovereign immunity is nevertheless valid. *Id*. at 159.[3]

Defendants assert that there has been no valid abrogation of sovereign immunity because there is no violation of the Fourteenth Amendment and no showing of deliberate indifference. However, the court need not determine that issue because even assuming, that there has been a valid abrogation of sovereign immunity in this case, the Ninth Circuit has held that to recover monetary damages under Title II of the ADA or the RA, proof of intentional

---

[3]The Ninth Circuit has held that Section 504 of the RA serves as a valid abrogation of Eleventh Amendment immunity for those state agencies accepting federal funds under Section 504. *See Vinson v. Thomas*, 288 F.3d 1145, 1151 (9th Cir. 2002) (citing its decision in *Douglas v. Cal. Dept. of Youth Authority*, 271 F.3d 812, *as amended*, 271 F.3d 910 (9th Cir. 2001)). Thus, the Eleventh Amendment is not a bar to suit against a state agency accepting such federal funds under this section. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181 (9th Cir. 2003).

1  discrimination is required, *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001)
2  (citation omitted), and there is no evidence of intentional discrimination before the court.
3   A plaintiff may prove intentional discrimination by establishing that a defendant was
4  deliberately indifferent. *Duvall*, 260 F.3d at 1138. This requires "both knowledge that a harm
5  to a federally protected right is substantially likely, and a failure to act upon that likelihood."
6  *Id.* at 1139 (citation omitted). Deliberate indifference requires something more than negligence.
7  *Id.*
8   While Plaintiff mentions in his Amended Complaint that he wanted the provision of
9  Braille, therapeutic housing, and other unspecified services for the blind, he does not explain
10 why each of the asserted accommodations were necessary. Moreover, there is no evidence of
11 that Defendants knew of a substantial likelihood that Plaintiff's federally protected rights would
12 be harmed, and in the face of that knowledge, they refused to act.

**1. Cane**

While Plaintiff states that his request for a cane was denied, and mentions that this somehow inhibited his yard access, the evidence presented by Defendants shows that Plaintiff was denied the use of a cane because it was not medically necessary and because of his violent disciplinary history. Defendant Poag, who is currently employed by NDOC as the Director of Nursing Services I at LCC, states in his declaration that Plaintiff was in lock-down status as a result of his disciplinary history, and would derive no benefit to his daily living activities from the provision of a cane. (Doc. # 67-1, Poag Decl., at 5 ¶¶ 6-7.) Defendants also provide the declaration of Dr. Michael Koehn, who is employed by NDOC as a medical doctor at ESP, and who has personal knowledge of Plaintiff's medical care and treatment at ESP. (Doc. # 67-1 at 8-9.) Dr. Koehn states that a cane is used is for mobility purposes, not blindness, and Plaintiff did not need ambulatory assistance. (Doc. # 67-1 at 8, Koehn Decl., at 8 ¶ 5, 9 ¶ 8.)

In addition, Plaintiff is in a confined space, and is able to memorize the location of objects in his cell. (*Id.* at 9 ¶ 9.) Defendants have also submitted the declaration of Quentin Byrne, who is employed by NDOC as the Acting Administrator of the Offender Management

1  Division, but during the time period relevant to this matter was the Associate Warden at LCC.
2  (Doc. # 67-1 at 11-13.) According to Mr. Byrne, any time Plaintiff leaves his cell, he is escorted
3  by at least two officers, alleviating the need for a cane for mobility when he leaves his cell. (Doc.
4  # 67-1 5 ¶¶ 6-7, 9 ¶ 9; Doc. # 67-1 at 11, Byrne Decl., ¶ 6, 12 ¶ 8.) Mr. Byrne states the lack of a
5  cane has not interfered with Plaintiff's yard time. (*Id*. at 12 ¶ 9.) The yard is fully fenced, with
6  no obstacles. (*Id*.) When Plaintiff goes to the yard, he is escorted by officers, and his restraints
7  are removed so that he has freedom to move about the yard for the duration of his yard time,
8  at which point the officers escort him back to his cell. (*Id*.)

9        Moreover, Plaintiff was not given a cane because it was determined that in light of his
10 disciplinary history (which includes the murder of his former cell mate, enucleating one eye out
11 of its socket and severely damaging the other, and staff assaults), it posed a threat to himself,
12 NDOC staff as well as other inmates. (Koehn Decl., Doc. # 67-1 at 8 ¶¶ 5-6; Byrne Decl., Doc.
13 # 67-1 at 11 ¶¶ 4-5, 12 ¶ 7.)

14       **2. Braille**

15       With respect to Plaintiff's request for some sort of Braille program or training, Plaintiff
16 does not identify in what context he made this request. Nor does he elaborate on how the denial
17 of a Braille program deprived him of the ability to participate in or benefit from programs,
18 activities, or services otherwise offered by NDOC.

19       According to Mr. Bryne, NDOC does not offer a Braille program to any NDOC inmate.
20 (Doc. # 67-1 at 12 ¶ 10.) To the extent Plaintiff's operative complaint can be interpreted as
21 alleging he was deprived of programs, services and activities that involve the ability to read,
22 Plaintiff has not specified any particular programs, services or activities. Nonetheless,
23 Defendants provide evidence that Plaintiff was issued a television and allowed the use of a tape
24 player to listen to books on tape, but lost those privileges due to bad behavior. (*Id*.) However,
25 Plaintiff is reviewed periodically for restoration of these privileges. (*Id*.)

26 ///
27 ///
28                                 10

### 3. Therapeutic housing

Concerning his request for a therapeutic housing program, Plaintiff does not state why he made this request or how he would benefit from such an accommodation or modification in prison policy. On the other hand, Defendants have presented evidence that even if NDOC had a therapeutic housing program, Plaintiff would not have qualified for the program because of his violent disciplinary history and resulting custody level require that he be housed in segregation. (Doc. # 67-1 at 13 ¶ 12.)

### 4. Conclusion

Plaintiff simply does not state how he has been denied the opportunity to participate in or a benefit of any service, activity or program offered by NDOC. Nor does he demonstrate that his requested accommodations were reasonable and necessary.

While not addressed in his Amended Complaint, Mr. Byrne confronts a possible claim that Plaintiff has been denied the ability to present his legal claims. Mr. Byrne states that Plaintiff is assisted in his legal work by other inmates and accommodations have been made for Plaintiff to meet with a law library assistance once a week and that assistant will read or compose any correspondence or other materials Plaintiff requires. (Doc. # 67-1 at 12 ¶ 11.) In addition, Plaintiff has been assisted by a law clerk regarding his legal documents. (*Id*.)

Thus, even assuming there has been an abrogation of sovereign immunity, Plaintiff cannot maintain his claim for money damages under Title II of the ADA or the RA against Defendants in their official capacities.

### D. Official Capacity Injunctive Relief Claims under the ADA and RA

As a result of the determination that Plaintiff cannot maintain his claims against Defendants in their individual capacities or in their official capacities for damages, the court will now turn to Plaintiff's request for injunctive relief against Defendants in their official capacities under the ADA and RA.

The court has reviewed the evidence presented by Defendants, which has been summarized above. *See, supra*, section III.C.1-4. Assuming, without deciding, that Plaintiff is

a qualified individual with a disability, the court finds that Defendants have met their burden of establishing there is no genuine issue of material fact as to whether they violated the ADA or RA. The court also finds that Plaintiff's operative complaint fails to raise a genuine issue of material fact so as to defeat Defendants' motion for summary judgment.

Under the ADA, the prison cannot, by reason of a prisoner's disability, exclude that person from participating in or deny that person the benefits of the prison's services, programs or activities. 42 U.S.C. § 12132. Likewise, the prison cannot otherwise discriminate against a disabled person. *Id.* Similarly, under the RA, the prison cannot exclude a prisoner from participating in or receiving the benefits of any federally funded program or activity solely because of the prisoner's disability. 29 U.S.C. § 794(a).

As indicated above, there is no evidence that Defendants denied Plaintiff the ability to participate in prison programs, activities or services or deprived him of the benefit of the prisons programs, activities or services because of his blindness mainly because Plaintiff has not identified any such specific programs, activities or services.

Nor can it be said that Defendants have engaged in the denial of reasonable modifications or accommodations to the entity's practices and procedures because there is no evidence that the denial of braille or therapeutic housing or other assistance for the blind deprived Plaintiff of an equal opportunity to participate in or enjoy the benefits of services, programs or activities otherwise provided by NDOC. There has also been no showing that the requested accommodations were necessary and reasonable.

To the extent Plaintiff includes an allegation that he was denied "other programs for the blind," he has not identified any other programs from which he has been denied participation.

In conclusion, the court finds that Plaintiff's conclusory allegations that his rights were violated under the ADA and RA, which do not explain how Plaintiff was denied participation in or deprived of a benefit in any service, programs or activities offered by the prison, do not create a genuine issue of material fact so as to defeat Defendants' motion for summary judgment. As a result, the court recommends that Defendants' motion be granted.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' motion (Doc. # 67) and entering summary judgment in their favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: May 23, 2013.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE